IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CLIFFORD WOODLEY, | ) | CASE NO. 1:06 CV 1815 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| DAVID BOBBY, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |

## Introduction

Before me by referral[1] is the petition of Clifford Woodley[2] for a writ of habeas corpus under 28 U.S.C. § 2254.[3]  Woodley is now serving a sentence of 18 years to life, imposed after he pled guilty in Cuyahoga County Common Pleas Court to murder with a firearm specification in 2003.[4]

In this petition, Woodley raises a single ground for habeas relief in the context of a claim of ineffective assistance of trial counsel.  Specifically, he alleges that he voluntarily

---

[1] ECF # 3.

[2] Woodley originally filed his petition *pro se* but the Office of the Ohio Public Defender was subsequently appointed to represent him.  ECF # 16.  Attorney Melissa Prendergast of that office has since entered an appearance as counsel for Woodley.  ECF ## 17, 18.

[3] ECF # 1.

[4] *Id.* at 5-6.

pled guilty because his trial counsel[5] threatened to withdraw from the case and leave Woodley without representation otherwise.[6]

Although this case has greatly expanded over a complex issue of procedural default, I will recommend finding, as will be more fully discussed below, that the Court overlook the procedural default and deny Woodley's petition on the merits.

## Facts

**A.      Underlying offense, guilty plea, and sentence**

This matter arose out the killing of Brian Williams in January, 2003.  The basic facts, as found by the state appeals court that reviewed the separate conviction and sentence of Woodley's accomplice, Aleathea Williams (no relation to Brian Williams), are straightforward.  The victim lived with a girlfriend on the upper level of a two-family home in East Cleveland, while Aleathea Williams, Woodley's girlfriend, lived on the lower level.[7] According to Aleathea Williams, Brian Williams made unwanted advances toward her.[8] After arguing with the victim over this conduct, Aleathea Williams brought her boyfriend,

---

[5] Woodley was represented by two attorneys at trial, Regis McGann and Timothy Gauntner.  *See*, ECF # 10 (state court record) at 3.

[6] ECF # 1 at 12.

[7] ECF # 10 at 271.

[8] *Id.*

Woodley, to the house to confront Brian Williams.[9]  During the ensuing argument, Woodley

shot Brian Williams, who later died.[10]

The State indicted Woodley on one count of aggravated murder with a firearm

specification and one count of having a weapon while under disability, both in connection

with this shooting.[11]  As noted, Woodley and Aleathea Williams had separate trials; the State

charged Aleathea Williams as Woodley's accomplice in the shooting.[12]  In addition, Woodley

sought and received a bifurcation of his charges, by which the aggravated murder charge

would be tried to a jury and the weapons charge would be tried subsequently to the court.[13]

Woodley originally pled not guilty to both charges.[14]

During jury impanelment for the aggravated murder trial, Woodley and the

prosecution reached a plea deal.  Essentially, the prosecution agreed that count one of the

indictment, which originally charged Woodley on aggravated murder, would be amended to

reduce the charge to murder, and count two, the weapons charge, would be dismissed.[15]  In

---

[9] *Id.*

[10] *Id.*

[11] ECF # 10 (state court record) at 1.

[12] *Id.* at 7.  Woodley's girlfriend and co-defendant, Aleathea Williams, ultimately pled guilty to an amended charge of reckless homicide and was sentenced to a term of three years in prison; such conviction and sentence, as noted above, being later affirmed on appeal.  *See*, *id.* at 270-72.

[13] *Id.* at 11-12.

[14] *See*, *id.* at 99.

[15] *Id.* at 81-82.

return for these concessions, Woodley agreed to change his plea to guilty on the murder count.[16]

In explaining this plea agreement to the trial court, one of Woodley's attorneys said that the prosecution had told Woodley over the lunch break that it had new testimony that it would likely offer against him at trial.[17] Consequently, after discussing the situation with Woodley and his family, Woodley decided that changing his plea to guilty and accepting the plea deal would serve his best interests.[18]

Accordingly, the trial court commenced a plea hearing.  At the hearing, Woodley, under oath, began the plea colloquy by telling the trial judge that he was satisfied with the services provided by his attorneys and that they had done everything he had asked them to do.[19]  Later in the colloquy, he assured the trial judge, among other things, that no one had made any promises to him, nor threatened him in any way in order to get him to plead guilty.[20]  Finally, he explicitly acknowledged that by pleading guilty he admitted that he actually murdered Brian Williams.[21]

---

[16] *Id.*

[17] *Id.* at 82.

[18] *Id.*

[19] *Id*. at 83-84.

[20] *Id.* at 88.

[21] *Id.* at 89.

Having assured herself by means of this testimony under oath at the plea colloquy that the necessary conditions for a valid plea were satisfied, the trial judge accepted Woodley's plea of guilty and entered a finding of guilt and a finding that such plea was voluntary.[22]

The court then proceeded to sentencing.  Woodley's counsel began the sentencing proceeding by stressing to the court that Woodley had "admitted involvement" in the murder of Williams.[23]  He later repeated that observation by noting that "Clifford did the manly thing by admitting his involvement here today," emphasizing to the court that Woodley was "sorry" about "the whole situation" and just wants to "serve his time and then rejoin society after that."[24]

Following that, Woodley himself told the court, "I'm sorry."[25]  He also told the victim's family, who were present in court that day, that he was "sorry for what happened," while also acknowledging that his apology "don't stop it from what had happened."[26]

The court then imposed a prison sentence of three years for the gun specification, such term to be served prior to and consecutive with a 15 years to life sentence for the murder conviction.[27]

---

[22] *Id.* at 90.

[23] *Id.* at 92.

[24] *Id.* at 93.

[25] *Id.* at 94.

[26] *Id.*

[27] *Id.*

**B.      First motion to vacate sentence/for a new trial/withdraw guilty plea**

Just two days after sentencing, Woodley filed, *pro se*, a "motion to amend, petition to vacate, or set aside and or correct sentence."[28]  In this single-page filing, Woodley claimed that "a conflict of interest in legal representation" mandated that he initiate this action "to avert the adverse effect of Counsel's ineffective assistance and performance in the preparation of this Case."[29]  Woodley alleged that because he has "diminished mental capacity," he was "coerced" into accepting the plea agreement when he "relied solely on the ineffective assistance of Counsel."[30]  Although Woodley in this motion neither detailed how a conflict of interest existed, nor explained how he had been coerced into accepting a plea against his will, he asked for leave to submit documents at a later date purportedly supporting his claims.[31]

As the State points out,[32] a review of the court's docket reveals that, while the trial court docketed this motion,[33] it never ruled on it.

---

[28] *Id.* at 102.

[29] *Id.*

[30] *Id.*

[31] *Id*.

[32] ECF # 7 at 2.

[33] ECF # 10 at 99.

Two weeks later, apparently unaware of Woodley's *pro se* motion, his two trial attorneys filed a motion for a new trial.[34]  Citing "newly discovered evidence material to defendant's case,"[35] the motion claimed that Monte Woodley, allegedly a prosecution witness against his cousin Clifford, made statements to third parties after Clifford Woodley's conviction that police "had the wrong man."[36]

Counsel attached to the motion three unsworn statements from witnesses who claimed to have information on this crime.  First, in a brief, "to whom it may concern" hand-written note, a witness stated that she observed Monte Woodley at his mother's home after Clifford Woodley's conviction, "banging his head on her bathroom vanity, saying he had messed up bad and was headed to prison again."[37]  This witness further related that Monte Woodley then stated that "they had the wrong man" in Clifford Woodley and so Monte Woodley "was going to do the right thing" and turn himself in.[38]

In the second statement, another witness claimed that she had also seen Monte Woodley at his mother's home at the same time.[39]  However, unlike the first witness who recalled Monte Woodley saying he was responsible for the crime and so would "do the right

---

[34] *Id.* at 103-08.

[35] *Id*. at 103.

[36] *Id.* at 105.

[37] *Id.* at 106.

[38] *Id.*

[39] *Id*. at 107.

thing" and turn himself in, this witness recalled that Monte Woodley stated twice that Aleathea Williams was responsible.  Specifically, this type-written statement relates that Monte Woodley said that "Fats [Clifford] didn't do anything, it was that b***h Altea (sic)."[40] Further, this witness claims that Monte Woodley then said, "Fats shouldn't be in jail, he didn't do anything, it was her."[41]

The third statement attached to this motion offers hearsay on hearsay to the effect that during the police investigation of this shooting, a friend told this witness that "Totianna mom tried to lie on Marcus mom and told Totianna to lie to (sic), but her grandfather told her to tell the truth about it."[42]

The State responded in opposition to this motion.[43]  In its brief, the State noted first that, under Ohio statute, obtaining a new trial on the basis of newly discovered evidence requires a showing that the evidence could not, with reasonable diligence, have been discovered prior to trial.[44]  Woodley's motion, the State argued, provided no record of his pre-trial diligence in seeking exculpatory witnesses and so no basis for concluding that these unsworn statements could not have been obtained prior to trial.[45]  Moreover, the State

---

[40] *Id.*

[41] *Id.*

[42] *Id*. at 108.

[43] *Id*. at 109-12.

[44] *Id.* at 110.

[45] *Id.*

observes, these inconsistent statements by a "distraught" Monte Woodley do not, of themselves, exonerate Clifford Woodley, "who was witnessed by several individuals committing the murder in question."[46]  Accordingly, the State concluded, Woodley had not met the statutory test for receiving a new trial, and the motion should be denied.[47]

More importantly, however, the State maintained that because Woodley entered a plea prior to trial even commencing, this motion was properly not one for a new trial but should be construed as one to withdraw his plea.[48]  Construed as such, the State claimed that the plea can be set aside only for "manifest injustice."[49]  In this case, Woodley entered a knowing, voluntary, and intelligent plea of guilty by which "he acknowledged  shooting Brian Williams and apologized to the victim's family."[50]  In light of that record, and construing this motion as one to withdraw a guilty plea, the State asserted that the unsworn statements attached to Woodley's motion "in no way give rise to the level of manifest injustice" sufficient to warrant withdrawal of the plea.[51]

The Ohio trial court, without opinion, denied the motion.[52]

--------

[46] *Id.* at 110-11.

[47] *Id.* at 111.

[48] *Id.*

[49] *Id*.

[50] *Id.*

[51] *Id*.

[52] *Id.* at

After the trial court's decision, Woodley, now acting through new counsel, filed a timely notice of appeal on July 2, 2003.[53]  On July 31, 2003, Woodley's counsel sought, and received, from the Ohio appeals court an extension of time until September 2, 2003, to file the trial record – a necessary element of an appeal in Ohio.[54]  After the extended deadline for filing the state record had elapsed without any record being filed, nor any additional extension sought, the Ohio appeals court on September 22, 2003, *sua sponte* dismissed this appeal for failure to file the trial court record.[55]

Woodley did nothing to respond to this dismissal for over a year.[56]  Finally, on October 22, 2004, he filed a motion for appointment of new counsel and for leave to appeal.[57]  In that motion, Woodley contended that he had only "recently discovered" that his appellate attorney had not filed the record on appeal as required by Ohio rules and, consequently, that his appeal had been dismissed.[58]

---

[53] *Id*. at 114.

[54] *Id.* at 141.

[55] *Id*. at 119.

[56] Despite this extended period where Woodley had nothing pending before any state court, the State here has not asserted the one-year federal habeas statute of limitations as an affirmative defense.  Because, as will be developed later, this petition  may be addressed and denied on the merits, there is no need to proceed further with any analysis of how this lengthy gap may have affected the timeliness of Woodley's federal habeas petition.

[57] ECF # 10 at 121-41.

[58] *Id.* at 135.

-10-

The Ohio court of appeals responded to Woodley's motion by initially denying the motion for leave to appeal as moot.[59]  However, the court, *sua sponte*, then chose to consider the motion as one for reinstatement of an appeal.[60]  In that form, it granted the motion to reinstate along with the motion to have new counsel appointed for the reinstated appeal.[61]

Woodley, now acting with new counsel, then filed a brief in his reinstated appeal from the trial court's denial of his motion for a new trial, raising a single assignment of error:

> The trial court violated the appellant's right to due process under the Fourteenth Amendment of the U.S. Constitution when it failed to conduct an evidentiary hearing on a motion when there is evidence of "actual innocence" attached to the motion and abused its discretion in denying such a motion.[62]

Woodley's argument on appeal was that the two witness statements attached to his original motion to the trial court should have been sufficient to warrant a hearing as to whether the witnesses were credible enough to support a finding of actual innocence such as would render Woodley's conviction a "manifest injustice."[63]

Significantly, although Woodley had raised the issue that his plea was coerced by his ineffective trial attorneys in the very first *pro se* motion to withdraw his plea, filed just two

---

[59] *Id.* at 142.

[60] *Id.*

[61] *Id.*

[62] *Id*. at 146.

[63] *Id.* at 149-50.

days after his conviction,[64] this appeal did not mention coercion by his attorneys as grounds for relief – even though Woodley was now represented on appeal by different counsel.

The State filed a brief in response,[65] asserting first that holding an evidentiary hearing on a motion for new trial is discretionary under Ohio law and that the trial court here had not abused its discretion, given that the new "evidence" consisted only of three unsworn statements.[66]  In addition, the State further contended that if the motion were considered as one to withdraw a guilty plea, the movant is required to make a prima facie showing that allowing the conviction to stand would be a manifest injustice before the court is required to hold a hearing – a test the three unsworn statements do not meet.[67]

The Ohio court of appeals thereupon affirmed the decision of the trial court denying Woodley's motion for a new trial.  The court found first that Ohio law precludes a defendant from filing a motion for a new trial after having entered a plea of guilty.[68]  Considering Woodley's motion then as one for withdrawal of his guilty plea, the appellate court found that the two letters were insufficient to establish a manifest injustice.[69]  The court noted that

---

[64] *See*, *id.*, at 102.

[65] *Id*. at 152-60.

[66] *Id*. at 156-58.

[67] *Id*. at 158-59.

[68] *Id*. at 170.

[69] *Id*. at 171.

Woodley's counseled plea of guilty, voluntarily and knowingly given, had "remove[d] the issue of factual guilt from the case."[70]

Of significance for federal habeas purposes, Woodley did not file for leave to appeal this decision with the Supreme Court of Ohio.

## C.    Second motion to withdraw the guilty plea

Just four days after Woodley, through his new appointed counsel, filed the appellate brief in the matter of his first motion to withdraw his guilty plea, he , *pro se*, filed a second motion with the trial court to withdraw his plea.[71]  In this second motion to withdraw the plea, Woodley advanced two grounds to support the motion:

> 1.    Defendant's plea of guilty was not knowingly, intelligently and voluntarily entered pursuant to the Due Process Clause of the United States Constitution where a defendant enters a plea to murder on the advice of his attorneys that the prosecutor was going to amend the indictment to subject him to the death penalty and if he rejected the deal he would be without counsel.[72]

> 2.    Defendant Woodley was denied his federal constitutional right to the effective assistance of counsel when counsel threatened defendant Woodley that if he did not plead guilty the prosecutor was going to amend the indictment to subject him to the death penalty and the attorneys would no longer represent defendant if he refused to accept the plea deal.[73]

_____

[70] *Id*. at 171-72.

[71] *Id*. at 181-206.  Woodley initiated, through counsel, his appeal from the denial of his first motion to withdraw the plea on April 15, 2005 and filed *pro se* the second motion to withdraw his plea on April 19, 2005.

[72] *Id.* at 184.

[73] *Id*. at 190.

The State responded in opposition.[74]  The State argued first that the plea colloquy in this case establishes that Woodley's plea was knowing, voluntary, and intelligent. It points out that in the plea colloquy the trial court:  (1) assured Woodley on the record that he would have counsel at all stages of the proceeding if he chose to go to trial, thus rebutting Woodley's claim that he was afraid that he would be without representation if his trial counsel would withdraw;[75] (2) inquired of Woodley if anyone had threatened him in any way to get him to plead guilty – a question Woodley answered under oath in the negative;[76] and (3) further inquired of Woodley as to whether anyone had told him to lie under oath about his understanding of the plea – a fact that contradicted Woodley's claim that his counsel had told him to remain silent about their coercion.[77]

In addition, as to the specific claims of attorney ineffectiveness, the State noted, without conceding the truth of Woodley's allegations, that while Woodley was not then under the threat of capital punishment with respect to the indictment as it was at the time of the plea, nothing prohibited the State from seeking to amend the indictment in the future to include a capital charge if the facts warranted.[78]  As such, it would not have been improperly coercive for defense counsel to have advised Woodley that failing to accept the plea would

---

[74] *Id.* at 207-13.

[75] *Id.* at 209-10.

[76] *Id.* at 210.

[77] *Id.*

[78] *Id.* at 211.

-14-

expose him to the risk of going to trial under an amended indictment that could subject him to the death penalty.[79]

In addition to these arguments on the merits,[80] the State also argued that Woodley's arguments were barred by *res judicata*.[81]  Specifically, the State asserted that the time to raise the arguments about attorney coercion was on direct appeal and, absent that, that Woodley had not shown sufficient new, competent evidence outside the record to overcome *res judicata*.[82]

On June 8, 2005, the trial court, without opinion, denied Woodley's second motion to withdraw his guilty plea.[83]  On September 13, 2005, Woodley moved to "set aside" this denial on the ground that the clerk of courts had not notified Woodley within three days of entry of the denial.[84]  The trial court, again without opinion, denied the motion to set aside.[85]

Woodley then sought, *pro se*, to file a notice of appeal and a motion for leave to appeal concerning the trial court's decision of June 8, 2005, denying the second motion to

---

[79] *Id.*

[80] Although the *res judicata* argument sequentially follows the argument on the merits in the State's brief, the State concluded its brief by presenting *res judicata* as the primary argument for denying the motion.  *See*, *id.* at 212.

[81] *Id.* at 211-12.

[82] *Id.*

[83] *Id.* at 214.

[84] *Id.* at 215-22.

[85] *Id.* at 223.

withdraw the guilty plea.[86] By this filing, Woodley sought to excuse his failure to timely file a direct appeal from the denial of the motion to withdraw on the basis that he never received notice of the court's decision.[87]

The State did not file a responsive motion, and the Ohio appellate court, without opinion, denied leave to file a delayed appeal,[88] thereby dismissing the appeal that had contemporaneously been noticed.[89]

Woodley then filed a timely *pro se* notice of appeal[90] and jurisdictional memorandum[91] in the Supreme Court of Ohio from the decision denying him leave to file a delayed appeal. In his jurisdictional memorandum, Woodley presents a single proposition of law:

> A trial court  denies a defendant his due process rights when it fails to notify a defendant of its decision in the case and thereby deprives a defendant of his liberty interest and prevents a defendant from seeking a timely appeal.[92]

---

[86] *Id.* at 240-46.

[87] *Id.*  Woodley stated that he only learned of the court's denial of his motion to withdraw the plea when his mother went to the clerk of court to check on the status of the motion.

[88] *Id.* at 247.

[89] *Id*. at 248.

[90] *Id.* at 251-55.

[91] *Id.* at 256-68.

[92] *Id.* at 257.

The State filed no responsive pleading and the Ohio Supreme Court, without opinion, declined to accept jurisdiction, dismissing the appeal as not involving a substantial constitutional question.[93]  Woodley did not seek a writ of certiorari.

**D.     Federal habeas petition**

A little over two months after the Ohio Supreme Court declined to hear Woodley's appeal arising out of the denial of his second motion to withdraw his guilty plea, Woodley filed the present petition for a federal writ of habeas corpus.[94]  In it, Woodley advances a single ground for habeas relief:

> Petitioner was denied effective assistance of counsel where his guilty plea to murder was not knowingly, intelligently and voluntarily entered after counsel threatened to withdraw from the case if petitioner refused to plead guilty.[95]

In his supporting brief, Woodley assumes "in all likeliness " that his failure to file a timely appeal from the trial court's denial of the second motion to withdraw the guilty plea will be asserted as procedural default by the State.[96]  He contends that any default here is excusable inasmuch as the untimeliness was caused by an impediment beyond his control, *i.e.*, the failure of the trial court to give notice of its denial.[97]

---

[93] *Id.* at 269.

[94] ECF # 1.

[95] *Id.* at 12.

[96] *Id.* at 7-8.

[97] *Id.* at 8-12.

He argues further, assuming the supposed default is cured, contending that he is entitled to habeas relief because his trial counsel, in violation of the standard prescribed in *Strickland*,[98] failed to independently investigate the prosecutor's factual representations made to support the plea[99] and also threatened to "abandon" him by withdrawing from the case if he did not plead guilty or provide him with "substandard" representation.[100]  Moreover, Woodley makes what appears to be a free-standing claim of actual innocence.[101]

The State, in its return of writ, contends first that Woodley has defaulted this claim because it was presented first to the trial court in the second motion to withdraw the plea, but then the claim was neither submitted to the appeals court nor to the Ohio Supreme Court because the motion for delayed appeal was denied.[102]  It also asserts that the trial record does not support Woodley's claim that his plea was coerced or involuntary due to threats by counsel to withdraw.[103]

Woodley, in his amended traverse, argues first that any procedural default can be overcome because his failure to timely file an appeal was due to an action of the state in not sending notice of the trial court's decision.[104]  Alternatively, he contends that the affidavit

---

[98] *Strickland v. Washington*, 466 U.S. 668 (1984).

[99] ECF # 1 at 17.

[100] *Id.* at 17-21.

[101] *Id*. at 21.

[102] ECF # 7 at 9-10.

[103] *Id*. at 17-19.

[104] ECF # 29, Attachment 1 at 6-9.

of Derrick Milton,[105] which relates that Monte Woodley told him that he (Monte) killed Brian Williams, establishes his actual innocence and so provides a gateway to excuse the procedural default and reach the habeas claim on the merits.[106]

As to the merits, Woodley asserts, based on affidavits of Woodley and his mother submitted here, that there is sufficient evidence to show that Woodley's trial counsel (1) did threaten to withdraw as counsel if Woodley did not plead guilty and/or did state that the prosecution would amend the indictment to include a capital charge, and (2) that such conduct violates *Strickland*.[107]

The State has filed a response to the amended traverse and the Milton affidavit, reasserting by reference its prior arguments.[108]

## Analysis

### A.  Standard of review

### 1.  *Procedural default*

As is well-recognized, the doctrine of procedural default prevents a federal habeas court from reviewing a federal claim that the state courts declined to address because the petitioner failed to comply with state procedural requirements.[109] This Circuit has long

---

[105] ECF # 14, Ex. 1.

[106] ECF # 29, Attachment 1 at 9-12.

[107] *Id*. at 13-16.

[108] ECF # 33.

[109] *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

-19-

employed a four-part test to determine if a petitioner has procedurally defaulted on a claim: (1) does a state procedural rule exist that applies to the petitioner's claim; (2) did the petitioner fail to comply with that rule; (3) did the state court apply the procedural rule in denying the petitioner's claim; and (4) is the state procedural rule an adequate and independent ground upon which the state may bar federal habeas review?[110] Moreover, the state procedural rule must be firmly established and regularly followed to constitute an adequate basis for foreclosing habeas review.[111]

**2.      *Overcoming procedural default***

Procedural default may be overcome, however, if a petitioner can show both cause for the default and actual prejudice as a result of the alleged violation of federal law.[112] Alternatively, a procedural default may also be overcome by demonstrating that failure to address the claims will result in a fundamental miscarriage of justice.[113]

To establish "cause" for a default, a petitioner must generally show that some objective factor, external to the petitioner that cannot fairly be attributable to him, precluded compliance with the state procedural rule.[114] Demonstrating "prejudice" requires a showing

---

[110] *Morales v. Mitchell*, 507 F.3d 916, 937 (6th Cir. 2007) (citations omitted).

[111] *Smith v. Ohio Dept. of Rehab. & Corrs.,* 463 F.3d 426, 431 (6th Cir. 2007) (citation omitted).

[112] *Id.*

[113] *Id.*

[114] *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

that the complained-of constitutional error worked to petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions.[115]

A fundamental miscarriage of justice occurs when one actually innocent is convicted.[116]  A petitioner establishes actual innocence by showing through new facts not available at trial that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.[117]  In this sense, actual innocence means "factual innocence, not mere legal insufficiency."[118]  Once established, actual innocence provides a "gateway" through which a habeas petitioner may pass through a procedural default and receive a hearing on the merits of his otherwise defaulted claim.[119]  Actual innocence is, therefore, not itself, with the possible exception of capital cases, a separate, free-standing claim on which habeas relief may be granted.[120]

### 3.    Triggering procedural default

It is well-settled that procedural default occurs when the last state court to adjudicate the petitioner's claim actually relies on the procedural bar as the basis for its decision.[121]

---

[115] *United States v. Frady*, 456 U.S. 152, 170 (1982).

[116] *Schlup v. Delo*, 513 U.S. 298, 326-32 (1995); *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

[117] *Schlup*, 513 U.S. at 317, 327; *see also*, *McCray v. Vasbinder*, 499 F.3d 568, 571 (6th Cir. 2007).

[118] *Bousley v. United States*, 523 U.S. 614, 623 (1998).

[119] *Schlup*, 513 U.S. at 316.

[120] *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007).

[121] *Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir. 2003).

-21-

However, where no state court has addressed the petitioner's constitutional claim in a reasoned decision but has merely denied relief in a summary manner, the federal habeas court must initially determine whether the summary denial rested on adequate and independent state law grounds before concluding that a procedural default occurred.[122]

In such cases, the Sixth Circuit pronounced the rule in *Simpson v. Sparkman*[123] that the federal habeas court must assume "that had the state court addressed petitioner's [constitutional] claim, it would not have ignored its own procedural rules and would have enforced the procedural bar."

### 4.    *Overlooking procedural default*

Notwithstanding these factors, the Supreme Court has held that federal courts are not required to address a claimed procedural default before deciding against the petitioner on the merits.[124]  Implementing this principle, the Sixth Circuit has held that when procedural default involves complex issues of state law, the federal habeas court may proceed directly to decide a claim against the petitioner on the merits without first resolving the procedural default defense.[125]

---

[122] *Hamilton v. Gansheimer*, 536 F. Supp. 2d 825, 830 (N.D. Ohio, 2008).

[123] *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).

[124] *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

[125] *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003).

-22-

**5.    *Federal habeas review of claims where there is no adjudication on the merits by the state court***

The standard of review dictated by 28 U.S.C. § 2254(d) applies, by its own terms, only to habeas claims that were "adjudicated on the merits in State court proceedings."[126] When a habeas claim was not adjudicated on the merits in state court, the federal habeas court must employ the pre-AEDPA standard, reviewing *de novo* questions of law and mixed questions of law and fact.[127]

**6.    *Guilty plea issued with advice of counsel alleged to be ineffective***

The Constitution requires that a defendant's plea of guilty be made knowingly, intelligently, and voluntarily.[128]  Ineffective assistance of counsel may prevent a defendant from entering a knowing and voluntary plea of guilty.[129]  In such cases where the guilty plea is entered upon the advice of counsel, "the voluntariness of the plea depends upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."[130]  Accordingly, as stated by the Supreme Court in *Hill v. Lockhart*, "the two-part

---

[126] 28 U.S.C. § 2254(d); *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

[127] *Maples*, 340 F.3d at 436; *Jones v. Bradshaw*, 489 F. Supp. 2d 786, 803 (N.D. Ohio, 2007).  In a circumstance not applicable here, federal courts utilize a modified form of AEDPA review where the state court decision did not squarely address the federal constitutional issue, but its analysis, nevertheless, bears "some similarity" to the requisite constitutional analysis.  *Filiaggi v. Bagley*, 445 F.3d 851, 854 (6th Cir. 2006).

[128] *Bousley*, 523 U.S. at 618; *Brady v. United States*, 397 U.S. 742, 750 (1970).

[129] *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973).

[130] *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

*Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."[131]

As is well-known, under *Strickland*, a petitioner claiming ineffective assistance of counsel must show both (1) that "counsel's representation fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors, the result of the proceeding would have been different."[132]  In the context of a challenge to counsel's representation on a plea of guilty, the first *Strickland* prong is evaluated on the basis of "whether counsel's advice was within the range of competence demanded of criminal attorneys."[133]

## B.     Application of standards

### 1.     *This Court need not resolve the procedural default issue but may move directly to deny Woodley's claim on the merits.*

Despite extensive review of the procedural default claim advanced by the State, I recommend bypassing the procedural default issue and moving directly to the merits of Woodley's claim.  As will be more extensively discussed below, the procedural default issue is exceedingly complex, and Woodley's claim has no merit.

Initially, I note that the record demonstrates that Woodley's claim of a coerced plea caused by ineffective assistance of trial counsel was first raised just two days after the plea

---

[131] *Id.* at 58.

[132] *Strickland*, 466 U.S. at 687-88.

[133] *Hill*, 474 U.S. at 58; *Carley v. Hudson*, 563 F. Supp. 2d 760, 772 (N.D. Ohio, 2008).

-24-

in his *pro se* motion for a new trial.  As such, Woodley unquestionably knew of the facts behind this claim almost immediately after entering the plea.

Despite that knowledge, Woodley, within weeks of filing his *pro se* motion, permitted the same attorneys he accused of ineffective representation to file another motion for a new trial that never mentioned ineffective assistance of counsel.  While that omission may be forgiven on the grounds that counsel cannot be expected to argue for their own ineffectiveness, no plausible reason exists for Woodley's failure to insist on presenting the ineffectiveness argument on appeal from the denial of this motion, when the court appointed new counsel for such appeal.

In the end, Woodley knew the factual grounds for this argument and yet did nothing to present the argument to the state courts through one entire appeals process.  As such, he should not receive federal habeas review absent a showing of cause and prejudice.

The analysis and resolution of the possible procedural defenses is complex.  First, although there is a gap of more than a year between the state appeals court's dismissal of the first notice of appeal on the original motion for a new trial for failure to file a record (September, 2003) and Woodley's *pro se* motion to have new counsel appointed for a renewed appeal (October, 2004), the State has not raised a statute-of-limitations defense.

Further, and more importantly, the State's argument on procedural default rests on the denial of Woodley's admittedly untimely appeal from the denial of his second motion to withdraw his plea.  In this second round of proceedings, the trial court denied Woodley's

motion without opinion.  But, the record shows that the State argued for a denial on the basis of *res judicata* – that Woodley could have raised the coercion argument at an earlier date.

Plainly, Woodley could have raised this argument earlier.  And, clearly, Ohio does enforce the rule that courts will not entertain arguments that could have been raised in earlier proceedings.  As such, employing the trial rule of *Simpson*, this Court could assume that the state trial court enforced Ohio's *res judicata* rule.

However, the issue is by no means as clear with the decision of the appeals court – also without opinion – affirming the trial court's denial.  Here, Woodley's appeal was clearly and admittedly late, requiring him to move for a delayed appeal.  Consequently, it is virtually impossible from the record for the federal habeas court to know if the Ohio appeals court denied Woodley's motion for leave to file a delayed appeal because, like the trial court, it concluded that *res judicata* would bar any appeal in this case or if it found that Woodley had not presented sufficient grounds to excuse his untimeliness.

Without knowing the basis for the denial by the appeals court, it is not possible to determine if Woodley has overcome the default.  If the state appeals court decision rests on *res judicata*, then Woodley may have procedurally defaulted without excuse.  If the decision rests on the late filing, he may have a cause argument based on late notice of the underlying judgment.

Because the state courts here all issued denials without opinions, resolving with any degree of confidence the key foundational issue of procedural default – *i.e.*, exactly on what basis did the state appeals court deny Woodley's motion – is fundamentally impossible.

Accordingly, because I recommend denying Woodley's petition on the merits, I recommend initially that the Court should bypass the procedural default defense and proceed to consideration of the merits.[134]

## 2. *Woodley's claim that ineffective assistance of counsel produced a coerced plea of guilty should be denied as without merit.*

Woodley's claim involves two separate allegations of constitutionally ineffective assistance. He asserts that his two trial counsel, after informing him that the prosecution had a new, "surprise" witness for trial and was going to amend the indictment to include a capital charge,[135] told Woodley and his mother that he should plead guilty so as not to be subject to the death penalty.[136] They also purportedly told Woodley that if he did not accept the plea, the attorneys would no longer represent him.[137]

The State, in its return of the writ, relies exclusively on Woodley's statements during the plea colloquy that he was satisfied with his lawyers' representation, that no one had threatened him to induce his plea, and that he understood that a lawyer would be provided for him in the event he did not have counsel.[138]

---

[134] Given that Woodley's ground for relief lacks merit, it is not necessary to base a decision on this case by applying the rule in *Simpson*, 94 F.3d at 203, to stack one assumption on top of another.

[135] ECF # 1 at 5.

[136] *Id.*

[137] *Id.*

[138] ECF # 7 at 17-18.

Woodley in his traverse argues that any representation that the indictment could be amended to include a capital charge was incorrect as a matter of law.[139]  Thus, he contends, by providing legally incorrect advice, his attorneys were ineffective and coerced him by that incorrect advice to plead guilty.[140]  He also maintains that threatening to withdraw from that case also amounted to ineffective assistance that coerced his plea.[141]  He asserts that, absent such ineffective assistance, he would not have pled guilty but would have "presented a robust defense" centered on witnesses who either saw Monte Woodley shoot the victim or heard Monte Woodley admit to that crime.[142]  That defense, he finally states, would have led to his acquittal at trial since no rational juror could have found him guilty beyond a reasonable doubt.[143]

In reviewing this matter *de novo*, I observe first that Woodley misapprehends the true nature of how the prosecution here might have amended the indictment to charge Woodley with a capital crime.  As Woodley points out, Ohio law provides that the court, on its own, may amend an indictment during trial for the limited purpose of correcting a defect or to conform it to the evidence providing that such a correction does not change the identity of

---

[139] ECF  # 29, Ex. 1 at 14.

[140] *Id*. at 14-15.

[141] *Id*. at 15.

[142] *Id*. at 16.

[143] *Id.*

the crime involved.[144]  However, as the State noted in its responsive brief to Woodley's second motion to withdraw his plea,[145] regardless of this limited authority of the court itself to modify an indictment once trial has commenced, the State in this case was perfectly free to have sought to re-indict Woodley before the grand jury on a capital charge because the jury in his case had not yet been empaneled[146] and so jeopardy for the murder of Brian Williams had not yet attached.[147]

Consequently, there would have been nothing legally impermissible in the State noting, at that stage of the proceedings, that Woodley was subject to being re-indicted on a capital charge and nothing constitutionally defective in Woodley's counsel relaying that statement to Woodley.  Rather, it would have been ineffective assistance for defense counsel not to have told Woodley that one possible consequence of failing to accept a plea at that juncture would be to expose him to possible re-indictment on a capital offense.

Similarly, based on this record, there is nothing improper about Woodley's defense counsel informing him that they would no longer serve as his counsel if he chose to reject the plea.  First, representation in capital cases is well-recognized as being a particular specialty, and since a death penalty case was a possibility if Woodley rejected the plea,

---

[144] *Id*. at 14 (citing Rule 7(D), Ohio Rules of Criminal Procedure).

[145] ECF # 10 (state court record) at 211.

[146] *Id*. at 81.

[147] *Dowling v. United States*, 493 U.S. 342, 348 (1990); *State v. Martin*, No. 87618, 2007 WL 1153469, at *3 (Ohio Ct. App., Apr. 19, 2007) ("In a jury trial, jeopardy attaches when the jury is empaneled and sworn.").

counsel here may well have been acknowledging that they were not suited for continuing representation if that were even a possible outcome of Woodley rejecting the plea.  Again, it is hard to imagine that informing one's client that different counsel would be needed should the case move forward as, potentially, a death penalty case should be held to be a constitutional error for a careful attorney practicing criminal law.

Further, it is simply not credible to conclude that Woodley took counsels' comment that they would withdraw if the matter went forward to mean that he would be totally without representation for any forthcoming trial.  Even Woodley does not relate that he engaged in any discussion at the time with these attorneys on the question of future representation.  In fact, as the State does point out, he immediately went on the record, under oath and stated that he was satisfied with their representation of him[148] and further affirmatively responded that he understood his rights when the trial court told him that, if he chose to go to trial, he would have counsel appointed for him during trial and "at every other stage of the proceedings."[149]

Based on the foregoing, I recommend finding that Woodley has not established, under the first or performance prong of *Strickland*, that the two stated actions of his trial counsel fell below the objective standard of reasonableness applicable, through *Hill*, to criminal attorneys in cases of counseled pleas.  Inasmuch as I recommend finding that no constitutionally infirm conduct occurred here, there is no need to consider, under the second

---

[148] ECF # 10 at 83-84.

[149] *Id.* at 87.

prong of *Strickland*, whether but for counsels' conduct in this case the result would have been different.

## Conclusion

For the foregoing reasons, I recommend the denial of Woodley's petition as without merit.


Dated:   November 4, 2008                           s/ William H. Baughman, Jr.
                                                    United States Magistrate Judge


## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[150]

---

[150] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).